UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK VALENTE and
LAURA VALENTE,

        Plaintiff,

v.

OAK LEAF OUTDOORS, INC.,

        Defendant.
_____/

Case No. 14-12892

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT, NORMAN JOHANSON [19]**

This products liability case comes before the Court on Defendant Oak Leaf Outdoors, Inc.'s motion to exclude Plaintiffs' expert, Norman Johanson (ECF No. 19.) Plaintiffs Patrick and Laura Valente ("Plaintiffs") commenced this action alleging that Plaintiff Patrick Valente ("Plaintiff") was injured when using a product designed, manufactured, distributed and/or sold by Defendant Oak Leaf Outdoors, Inc. (Am. Compl. ¶ 6.) The Court heard argument on both this matter and Defendant's motion for summary judgment on July 8, 2015.

Plaintiffs' Complaint alleges "negligence in the design and sale" of the Lone Wolf Climbing Stick. Defendant claims that Plaintiffs' expert, a mechanical engineer, Norman Johanson, must be excluded pursuant to Federal Rule of Evidence 702 as not qualified to testify regarding climbing sticks and Johanson's testimony must be excluded because his opinions are unreliable and irrelevant under the standards set forth by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny.

1

**I.     Facts**

Plaintiff, Patrick Valente, used a Lone Wolf Climbing Stick while hunting. (Defs.' Mot. Exclude at 10.) "A climbing stick is a product that hunters use to ascend/descend trees to reach their hunting treestand so that they may hunt from an elevated position." (*Id.*) The Climbing Stick consists of "a three foot long tubular metal upright member with three equally spaced articulated handgrips/steps." (*Id.*)

On the day of the accident, Valente installed the climbing stick on a tree. He then used the device to move up and down the tree as he prepared a hunting treestand. (Defs.' Mot. Exclude at 10.) On his last descent, after partially descending the climbing stick, Valente became separated from the climbing stick. His left hand ring finger caught on the climbing stick steps and resulted in the dismemberment of Valente's left hand ring finger. (*Id.*)

Plaintiffs retained Johanson, a mechanical engineer, with experience in product design, manufacturing, and product safety to testify as an expert witness on their behalf. (Pl's Resp. at 5.) Plaintiffs seek admission of Johanson's testimony to explain to the jurors how the climbing stick's design caused the injury and how a safer design could have been implemented.  (*Id.*)

**II.    Analysis: Admissibility of Expert Testimony**

    **A. Standard of Review**

"Rule 702 of the Federal Rules of Evidence provides the touchstone for expert testimony."  *United States v. Cunningham*, 679 F.3d 355, 378 (6th Cir. 2012).  Courts considering expert testimony examine admissibility within the context of Federal Rule of

Evidence 702.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule amended in 2000 reflects the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the many subsequent cases applying *Daubert*, including *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Under Rule 702, "expert witnesses must be qualified to testify to a matter relevant to the case, and a proffering party can qualify their expert with reference to his 'knowledge, skill, experience, training or education.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 293 (6th Cir. 2007) (quoting Fed. R. Evid. 702).

> "Qualifying an expert by knowledge, skill, experience, training or education is only the first hurdle to clear under Rule 702. An expert's proposed testimony must meet two additional requirements to be admissible: it must be (1) relevant, meaning that the testimony will help the trier of fact to understand the evidence or to determine a fact in issue, and (2) reliable."

*Cunningham*, 679 F.3d at 379-380 (internal quotations omitted). "In *Daubert*, the United States Supreme Court held that Rule 702 requires district courts to ensure that expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Meemic Ins. Co., v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 761 (E.D. Mich. 2010)(Edmunds, J.)(quoting *Daubert*, 509 U.S. at 597). Thus the court must evaluate not only the expert's qualifications but must additionally determine that the expert's testimony meets the two

3

*Daubert* requirements: (1) relevance and (2) reliability.

"In making these dual determinations, the district court acts in the role of 'gatekeeper' and must 'evaluat[e] the relevance and reliability of proffered expert testimony with heightened care.'" *Cunningham*, 679 F.3d at 380 (citing *Surles*, 474 F.3d at 295). "In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." Advis. Comm. Notes to Fed. R. Evid. 702. "As 'gatekeeper,' the trial judge is imbued with discretion in determining whether or not a proposed expert's testimony is admissible, based on whether it is both relevant and reliable." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007). Thus, Rule 702 "imposes a 'gatekeeping' duty on district courts [to] exclude unreliable and irrelevant evidence." *Meemic Ins.*, 717 F. Supp. 2d at 761; *see e.g., Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). "Courts take a flexible approach to deciding Rule 702 motions and have broad discretion in determining whether to admit or exclude expert testimony." *United States v. H&R Block, Inc.*, 831 F. Supp. 2d 27, 30 (D.D.C. 2011)(quotations omitted); *see also Kumho Tire Co.*, 526 U.S. at 152-53 (noting that the trial judge has "broad latitude" in determining whether an expert's testimony is reliable).

### B. Plaintiffs' Expert Norman Johanson

Defendant has moved to exclude the expert testimony of Mr. Norman Johanson, Plaintiffs' expert witness. Defendant argues Johanson is (1) not qualified to provide expert testimony in this case because he lacks the background, experience, and training necessary to render opinions concerning climbing sticks and (2) because Johanson's

opinions fail the two requirements of the *Daubert* case, that the testimony be reliable and relevant. (Defs.' Mot. Exclude at 9.)

As discussed in more detail below, Johanson meets the necessary qualification to be considered an expert. Additionally, Johanson's testimony meets the criteria for admissibility under the *Daubert* standard of both relevance and reliability. While Johanson's testimony is limited in its quality, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### 1. Johanson's Qualifications are Sufficient

Defendant argues that Johanson has insufficient expertise on, "background about or experience with climbing sticks used by a hunter to ascend a tree." (Defs.' Mot. Exclude at 14.) "Although this requirement has always been treated liberally, as the Sixth Circuit...observed in *Pride v. BIC Corporation*, 218 F.3d 566 (6th Cir. 2000), that liberal interpretation of this requirement does not mean that a witness is an expert simply because he claims to be." *Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000)(internal quotations omitted). Defendant thus claims Johanson lacks the necessary "knowledge, skill, experience, training, or education" to qualify as an expert of climbing sticks as required in Fed. R. Evid. 702.

Defendant is incorrect in asserting Johanson must have experience with climbing sticks specifically in order to qualify as an expert. "When making a preliminary finding regarding an expert's qualifications...the court is to examine not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303

(6th Cir. 1997)(abrogated on other grounds by *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir. 1998))(internal quotations deleted).

Defendant does not dispute Johanson is qualified to testify regarding ladders, hunting equipment and product safety as he has done in the past. His professional experience includes more than thirty-five years of work in manufacturing and product design and seventeen years investigating product safety issues. (Pl's Resp. at 8, Ex. B, Johanson Resume.) Johanson has testified as an expert regarding hunting equipment in deposition six times and evaluated ladder designs as an expert from a safety standpoint at least twelve times. (*Id.* at 5.)

Johanson's lack of expertise in the specialized area of climbing sticks does not limit the admissibility of his testimony. *See Surles,* 474 F.3d at 294 (upholding district court's determination that although the expert's experience was not specific to a particular industry, his background and experience would help the jury make sense of the evidence. "It is of little consequence to questions of admissibility that [the expert] lacked expertise in the very specialized area of commercial bus line threat assessment"); *see also First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) (noting the expert's unfamiliarity with some specific aspects of the subject at hand "merely affected the weight and credibility of [the] testimony, not its admissibility"); *Smith v. BMW N. Am., Inc.*, 308 F.3d 913, 919 (8th Cir. 2002) (overturning the district court for excluding testimony of an expert witness qualified in a general field merely because that witness lacked expertise more specialized and more directly related to the issue at hand). Effective cross-examination will provide ample opportunity for Defendant to clarify that Johanson's testimony is not based on his experience with climbing sticks specifically but only on his other qualifying expertise.

Defendant argues that Johanson's expert testimony regarding tree stands was excluded by another court in a different case.[1] The previous exclusion, however, did not relate to Johanson's qualifications as an expert, but rather to the specific testimony he offered in a particular case. (Defs.' Mot. Exclude at 12-13; Reply at 2.)  That court's exclusion of Johanson's testimony was based on the particular facts of an unrelated complaint and is not relevant to this Court's analysis of Johanson's qualification.[2]

Thus despite Johanson's limited knowledge of climbing sticks, his education in mechanical engineering, his extended experience with manufacturing, product design, and product safety, and his previous experience offering expert testimony related to hunting equipment and ladders are collectively sufficient qualifications.  Johanson is fit to offer expert testimony regarding the climbing stick.

### 2. Johanson's Opinions are Reliable and Admissible

"Once the proposed expert has crossed the foundational threshold of establishing his personal background qualifications as an expert, he must then provide further foundational testimony as to the *validity* and *reliability* of his theories." *Berry*, 108 F. Supp. 2d at 749

---

[1] Defendant argues that Plaintiffs' expert has been stricken as an expert in one case based on his testing methods being invalid and unreliable in that case. (Def.'s Mot. To Exclude 11-12.) Defendant argues that this is contrary to Johanson's sworn testimony in the current case, when he was asked questions about whether he was ever disqualified, whether his testimony was ever excluded or whether he was ever "unable to testify, stricken." (Johanson Dep. 140-41.) In the context of the exchange at the deposition, it is not clear that Johanson was untruthful in his testimony and the Court will not use this as a basis to strike the expert.

[2] *Yeargain v. Summit Tree Stands, LLC*, 09-cv-00170 (E.D. Mo. 2012). The Missouri district court held the testing Johanson performed to support his expert testimony of a design defect in a treestand failed to follow the specifications of the subject tree stand. Due to this failure to follow the treestand's specifications, Johanson's testimony was ruled unreliable and likely to confuse a jury.

(emphasis added). The standard of evidentiary reliability "requires a valid connection to the pertinent inquiry" of the expert's testimony. *Daubert*, 509 U.S. at 590 and 592. "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question...the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co.*, 526 U.S. at 149 (internal quotations omitted). Here, Defendant calls into question the validity of Johanson's opinions and thus the Court, as gatekeeper, must review the reliability of Johanson's testimony to the court.

The Court, applying *Daubert*, is to consider the basis of an expert's opinion by evaluating (1) whether the "technique or theory can be or has been tested"; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; (4) "the existence and maintenance of standards and controls"; and (5) "whether the technique or theory has been generally accepted in the scientific community." Advis. Comm. Notes to Fed. R. Evid. 702. These criteria, originally created for evaluating scientific expert testimony are neither exclusive nor dispositive and should be reasonably modified to apply to other expert testimony and the particular facts of a particular case. *Kumho Tire Co.*, 526 U.S. at 141-42, 150-51.

In *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887 (7th Cir. 2011), a worker fell from a scaffold injuring himself. He sought to recover damages from the scaffold manufacturer for his injuries on the basis of a design defect in the scaffold. The district court excluded the worker's expert's testimony as unreliable and the circuit court upheld this decision. The circuit court held the district court was within its discretion to conclude the expert's testimony was unreliable, not simply shaky. *See Bielskis*, 663 F.3d at 894. The expert

8

relied on "basic engineering intelligence" and "solid engineering principles that any other engineer would use" as the basis for his testimony. *See id.* He did not however perform testing to support his conclusions. After examining the broken scaffold the expert formed his conclusions but did not take any measurements or quantify the tensile strength or yield of strength of the broken caster stem of the scaffold. Additionally the expert submitted nothing demonstrating any consensus in the engineering community for his conclusions. *See id.* at 895. "Nor is it possible to assess the known or potential rate of error behind [the expert's] methodology because he used no particular methodology to reach his conclusions." *Id.* The *Bielskis* expert proposed an alternative design that was similarly untested. The suggested design was also unused in the marketplace. Nor did his suggestions meet with any recommendations or requirements for any industry-wide standards for climbing equipment.

Conversely, the Sixth Circuit has under similar circumstances to those in *Bielskis* overturned a district court's decision holding an expert's testimony unreliable. In *Palatka v. Savage Arms, Inc.*, 535 F. App'x. 448 (6th Cir. 2013), the plaintiff sued a firearms manufacturer for a flaw in the muzzleloading rifle design which allowed the rifle to explode in the plaintiff's hand severing two fingers. The plaintiff sought to recover damages from the firearms manufacturer for his injuries on the basis of design and manufacturing defects in the rifle. The district court excluded the expert testimony of two plaintiff experts, including a mechanical engineer, for being irrelevant and unreliable.

The circuit court overturned the district court decision to exclude both experts. One expert, a professor of mechanical engineering at Michigan State University offered his opinion that the design of the firearm was defective because a hole located at the top-

center of the barrel "unnecessarily increase[d] the stress on the barrel during firing, leading to failure." *Id.* at 454. The expert "opined that the dangers associated with the gun could be reduced, and the gun made safer, by eliminating the unthreaded depth of the hole." *Id.* Despite the fact that the expert relied only on his engineering intelligence and engineering principles for his testimony, and performed no independent testing of the rifle to support his conclusions, the Sixth Circuit Court held the testimony to be admissible. The court stated "his skill, education, and training in mechanical engineering render him competent to offer opinions on a variety of mechanical topics, and we will not require [the expert] to have a specialized knowledge of firearms to offer opinions here." *Id.* at 455. The circuit court determined the expert's opinion would aid the jury in determining if there was a design defect.

Further the circuit court determined the expert's failure to test his proposed alternative design and the lack of knowledge concerning the amount of pressure generated in the barrel during firing were not sufficient reason to exclude his testimony. These insufficiencies in the expert's testimony do not weigh on the testimony's admissibility. *Id.* at 455. "His opinion bears none of the 'red flag' that we have held may justify exclusion, such as: "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* at 456 (citing *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012)). The Sixth Circuit Court held the expert's testimony admissible and relied on cross-examination to highlight the testimony's shortcomings and allow the jury to determine the weight the testimony should be given. *Id.*

at 456.[3]

Here, Johanson's testimony is similar to the expert's testimony in *Palatka*. Johanson, a mechanical engineer, reviewed deposition testimony from the Plaintiff, emergency first responders and from Defendant's president. (Pl's Resp. at 5.) Additionally, Johanson examined exhibits produced by Plaintiff and Defendant including photographs of the product, reviewed incident reports from the Consumer Product Safety Commission regarding other tree stands, applied standards promulgated by ANSI, partially modified a climbing stick for comparison purposes and generated an expert opinion report. (Pl's Resp. at 6, Ex. F; Def.'s Reply at 3.) Finally Johanson performed a series of unscientific tests[4] on a single section of the climbing stick in order to form his opinion about the product's safety when used in a real life hunting setting.

Like *Palatka*, much of Johanson's expert opinions are based on his mechanical engineering intelligence and general engineering principles rather then specific scientific testing. Johanson, using his general knowledge in product safety and mechanical engineering, is critical of the tread and shape of the climbing stick steps. Johanson even partially modified an example climbing stick to demonstrate his suggested changes. His

---

[3] Defendant cites *Cook v. American S.S. Co.*, 53 F.3d 733 (6th Cir. 1995) (abrogation recognized by *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir. 1998) (rejecting an expert's opinion based solely upon visual examination of a cord that failed thus causing the plaintiff's injury); *Pomella v. Regency Coach Lines, Ltd.*, 899 F. Supp. 335 (E.D. Mich 1995)(rejecting the "eyeballing" approach of a passenger's expert testimony regarding an automobile accident based on a friction coefficient that was found in a text book). Each holding was based on particular facts of the case.

[4] A. "I tested very empirically, not scientifically. I can do a scientific test, but I have not done it at this point." (Doc.18, at 46.) He also tested his tread and modifications by trying three different boots on the steps.

modifications are incomplete but they included adjustments to the treads of the climbing stick allegedly providing positive gripping. (Johanson Dep. at 47.) Other partial modifications included beveling or slanting the sharp points and edges of the foot grips in order to minimize the likelihood of jewelry being caught on the pointed end of the step. (Johanson Dep. at 99-103.) Additionally, Johanson demonstrated such modifications by making similar partial adjustments to his own exemplar climbing stick. Like *Palatka*, Johanson's suggested modifications are untested (except by himself) and are recommended based on his knowledge and experience with mechanical engineering, product design, manufacturing and product safety.

Johanson testified that the deviation of the climbing stick from the American National Standard Institute A 14.2-1990 for Ladders, Portable Metal, Safety Requirements, Articulated Ladders caused Plaintiff's injury. While Defendant argues these standards do not apply to portable climbing sticks, Johanson provides knowledgeable testimony about the manner in which the climbing sticks deviate from these standards. (Pl.'s Resp. Ex. C, Johanson Dep. 100-01, 106-07.) It must be noted, however, that Johanson did not measure the radius on the existing steps, nor on his alternative design. (Johanson Dep. 103, 107.)

Defendant further claims the opinion testimony offered by Johanson is unsupported and speculative, *ipse dixit*. "[T]he Court should focus on the expert's methodology rather than the expert's conclusions, but the conclusions must be connected to the existing data by more than the *ipse dixit* of the expert." *Meemic*, 717 F. Supp. 2d at 762. While Johanson, a mechanical engineer, is providing expert testimony regarding the specific mechanical function of a product, and such technical expert opinion lends itself to data driven testing and analysis, Johanson's testimony, like the expert testimony in *Palatka*,

12

is limited to his opinions and conclusions and offers no scientific data in his assertions. As the court determined in *Palatka*, an expert's testimony based on their expertise and knowledge is admissible and thus is not just the *ipse dixit* of the expert. Moreover, "the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Advis. Comm. Notes to Fed. R. Evid. 702 (citing *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)).

Although Johanson's testimony is largely opinion based, in keeping with *Palatka* Johanson's testimony is reliable and admissible. Johanson's testimony has been considered in Defendant's accompanying motion for summary judgment. Had Plaintiffs' design defect claim survived summary judgment, Defendant would have had every opportunity to demonstrate the weakness of Johanson's testimony through cross examination and the jury would have determined its value.

### 3. Johanson's testimony is relevant and will assist the trier of fact in understanding the evidence or determining a material fact in question.

In addition to requiring all expert testimony be reliable, *Daubert* further requires any testimony also be relevant. *Daubert*, 509 U.S. at 579. "Expert testimony is relevant only when it will assist the trier of fact in understanding the evidence or determining a material fact in question." *Meemic*, 717 F. Supp. 2d at 766 (citing *Daubert*, 509 U.S. at 592-93).

Johanson's opinions will aid the jury in determining whether the climbing stick has a design defect. His ability to speak to the design of the climbing stick from a product safety

perspective, the stick's specifications in comparison to ANSI standards, his proposed modifications and other models on the market, are all tools the jury may weigh in evaluating the design. Johanson must limit his opinions to those based on professional experience since he performed no scientific experimentation.[5] Nonetheless Johanson's opinions, based on his specialized expert knowledge will be beneficial to the jury in their determination of liability.

### III. Conclusion

For the above stated reasons, Defendant's motion to exclude Plaintiffs' expert is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: July 23, 2015


I hereby certify that a copy of the foregoing document was served upon counsel of record on July 23, 2015, by electronic and/or ordinary mail.


        s/Carol J. Bethel
        Case Manager

---

[5] Johanson testified he is not going to offer any testimony on whether or not Plaintiff was hunting safely, he has no criticism about the metal used for the product, he is not offering any human factors testimony, he has no opinions pertaining to the warnings in this case, and he is not offering an opinion on manufacturing defects. (Johanson Dep. 50-52, 105, 126-27)